IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PATRICIA A. S.,

        Plaintiff,

v.                              Civil Action No.
                                        8:20-CV-0434 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

CONBOY McKAY LAW FIRM      LAWRENCE D. HASSELER, ESQ.
307 State Street
Carthage, NY 13619

FOR DEFENDANT

SOCIAL SECURITY ADMIN.       MICHAEL L. HENRY, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(3)(c), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on July 7, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is GRANTED.

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)    The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:    July 12, 2021
          Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
PATRICIA A. S.,

                        Plaintiff,

vs.                              8:20-CV-434

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Digitally-Recorded Telephone Conference on July 7,

2021, the HONORABLE DAVID E. PEEBLES, United States

Magistrate Judge, Presiding.

                A P P E A R A N C E S

                   (By Telephone)

For Plaintiff:       CONBOY, McKAY LAW FIRM
                     Attorneys at Law
                     307 State Street
                     Carthage, New York  13619
                       BY:  LAWRENCE D. HASSELER, ESQ.

For Defendant:       SOCIAL SECURITY ADMINISTRATION
                     Office of General Counsel
                     J.F.K. Federal Building
                     Room 625
                     Boston, Massachusetts  02203
                       BY:  MICHAEL L. HENRY, ESQ.


            *Jodi L. Hibbard, RPR, CSR, CRR*
          *Official United States Court Reporter*
                *100 South Clinton Street*
             *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1    (The Court and all counsel present by

2    telephone, 11:11 a.m.)

3    THE COURT:  I appreciate the excellent

4    presentations of both counsel, both through their written

5    briefs and orally.

6    I have before me a challenge to an adverse

7    determination by the Commissioner of Social Security finding

8    that plaintiff was not disabled at the relevant times and

9    therefore ineligible for the benefits which she sought.  The

10    challenge is raised pursuant to 42 United States Code

11    Sections 405(g) and 1383(c)(3).

12    The background is as follows:  Plaintiff was born

13    in March of 1975 and is currently 46 years of age.  She was

14    41 years old at the time of the alleged amended onset date of

15    September 14, 2016, and 43 at the time of the administrative

16    hearing in this matter.  She stands approximately 5 foot

17    5 inches in height.  Her weight has fluctuated as much as 30

18    to 50 pounds.  At the time she prepared her functional

19    report, she weighed 124 pounds.  At the time of the hearing

20    she weighed 158 pounds.  Plaintiff underwent bariatric bypass

21    surgery in 2016 and has had medically induced anorexia.

22    Plaintiff is married and lives with her husband in a mobile

23    home in Waddington, New York.  She has two children who at

24    the time of the hearing in August 2018 were 17 and 23 years

25    of age.  Neither of those children resides with the

1    plaintiff.  Plaintiff has a high school degree and two years

2    of college education.  While in school she attended regular

3    classes.  Plaintiff is right-handed.  She has a driver's

4    license but no car, her vehicle apparently was repossessed.

5         Plaintiff worked until September 2016 in various

6    positions, most of short duration, including as a cashier, a

7    merchandiser, a stocker, a team leader, a dairy

8    representative and dairy inspector, and a sales associate in

9    an appliance store.

10        Plaintiff suffers from physical and mental

11   diagnosed conditions.  Mentally her conditions have been

12   variously diagnosed as bipolar II disorder, depressive

13   disorder with atypical features, post-traumatic stress

14   disorder, anxiety, and an adjustment disorder with

15   depression.  She is not currently undergoing any specialized

16   treatment for her psychiatric condition except through her

17   general practitioner who prescribes medication.  She did in

18   the past see the Canton-Potsdam Behavioral Health Services

19   facility as well as to obtain services from the Mosaic

20   Behavior Health Services.

21        Physically, plaintiff has been diagnosed as

22   suffering from fibromyalgia, psoriatic arthritis of long

23   standing, GERD, and a left shoulder issue.  Plaintiff's

24   primary provider is Dr. Emily Wood who she has seen since

25   September of 2000 -- I'm sorry, November of 2016.  She sees

1    Dr. Wood approximately every six to eight weeks.  She has

2    also consulted with Dr. Juan-Diego Harris, a pain specialist,

3    Dr. Lai Kuang, another pain provider, and Dr. Eyal Kedar, a

4    rheumatologist.  She has also seen various other physician's

5    assistants and nurse practitioners.

6            Plaintiff has been prescribed various medications

7    over time including Humira, Prozac, Savella, a Butrans patch,

8    oxycodone, Soma, Stelara, Percocet, Prilosec, and omeprazole.

9    She uses a cane, although Dr. Wood, her primary provider,

10   indicated at page 730 of the administrative transcript that

11   it is not required.  She has also undergone radiofrequency

12   ablation, injections, she uses a TENS unit, she has tried

13   acupuncture and physical therapy.  Plaintiff does not smoke.

14   She does occasionally use marijuana for her pain, she has not

15   been prescribed medical marijuana.  Plaintiff does and has

16   consumed in the past alcohol and has had some issues with

17   regard to alcohol and has undergone some AA treatment.

18           In terms of activities of daily living over time,

19   she is able to shower and bathe, she can groom, she does some

20   driving, some laundry, cleans, she does some cooking, she

21   does dishes, she does not shop, she watches television,

22   reads, she plays with her two small dogs, she did at one

23   point attend her daughter's volleyball games, she has been to

24   one or more casinos in the past, and she walks.

25           Procedurally, plaintiff applied for Title II and

Title XVI benefits on September 15, 2016, alleging an onset
date of May 24, 2016.  That was later amended to
September 14, 2016, the date on which plaintiff left her last
work.  In support of her application, she claims disability
based on stomach pain and scar tissue from multiple
surgeries, gastric bypass side effects, depression,
arthritis, and fibromyalgia.  A hearing was conducted on
August 28, 2018 by Administrative Law Judge Robyn L. Hoffman
to address plaintiff's application.  Administrative Law Judge
Hoffman issued an adverse decision on February 21, 2019.
That became a final determination of the agency on March 4,
2020 when the Social Security Administration Appeals Council
denied plaintiff's application for review.  This action was
commenced on April 15, 2020 and is timely.

In her decision, ALJ Hoffman applied the familiar
five-step sequential test for determining disability.  She
noted initially that plaintiff was last insured on June 30,
2 -- or will be, 2022.

At step one, ALJ Hoffman concluded plaintiff had
not engaged in substantial gainful activity since
September 14, 2016.  She did do some work subsequent to that
date but did not rise to a level of substantial gainful
activity.  The administrative law judge noted, however, that
she did consider plaintiff's ability to work in an appliance
store when formulating the residual functional capacity.  She

1    testified that there was some lifting involved as I recall.

2           At step two, ALJ Hoffman found that plaintiff does

3    suffer from severe impairments that impose more than minimal

4    limitations on her ability to perform work functions,

5    including fibromyalgia, lumbar facet arthropathy, psoriatic

6    arthritis, status post gastric bypass, and degenerative tear

7    of the acetabular labrum of the right hip.

8           At step three, ALJ Hoffman concluded that

9    plaintiff's conditions do not meet or medically equal any of

10   the listed presumptively disabling conditions set forth in

11   the Commissioner's regulations, specifically considering

12   Listings 1.02 and 1.04.

13          ALJ Hoffman next concluded that despite her

14   conditions, plaintiff retains the residual functional

15   capacity, or RFC, to perform less than a full range of light

16   work, imposing some limitations that are inconsistent with a

17   full range of light work, finding that she can occasionally

18   lift and carry 20 pounds, frequently lift and carry

19   10 pounds, sit for up to six hours and stand or walk for

20   approximately six hours in an eight-hour day with normal

21   breaks.  She is limited to frequent reaching in all

22   directions, and the claimant should avoid concentrated

23   exposure to excessive amounts of respiratory irritants such

24   as dust, odors, fumes, gases, and hot and cold temperature

25   extremes.

1          Applying that residual functional capacity at step

2     four, the administrative law judge essentially bypassed the

3     step in light of the paucity of information concerning

4     plaintiff's past relevant work.

5          At step five, ALJ Hoffman concluded that if she

6     were able to perform a full range of light work, plaintiff

7     would be not disabled pursuant to Rule 202.21 of the

8     Medical-Vocational Guidelines set forth in the Commissioner's

9     regulations, the so-called Grids.  She concluded that the

10    limitation to frequent reaching was not significant and that

11    plaintiff is able to use both hands to handle, finger, feel

12    and therefore can grasp, hold, and turn objects.  She also

13    concluded that the limitation associated with the

14    environmental conditions does not significantly impact her

15    ability to work, citing Social Security Rulings 83-14 and

16    85-15.  She therefore concluded that those additional

17    limitations did not sufficiently erode the job base on which

18    the Grids are predicated to make it necessary to secure the

19    testimony of a vocational expert and found that plaintiff was

20    not disabled at the relevant times.

21          As you know, the court's function is to determine

22    whether correct legal principles were applied and the result

23    is supported by substantial evidence, defined as such

24    relevant evidence as a reasonable mind would find sufficient

25    to support a conclusion.  As the Second Circuit Court of

Appeals noted in *Brault v. Social Security Administration
Commissioner*, 683 F.3d 443 from 2012, this is an extremely
deferential standard.  The standard is more stringent than
the clearly erroneous standard that we, as lawyers, are
familiar with.  The Second Circuit noted that under the
substantial evidence standard, once an ALJ finds a fact, the
fact can be rejected only if a reasonable fact finder would
have to conclude otherwise.

The plaintiff, in support of her challenge, raises
four interrelated contentions.

The first is that, and the key focus, quite
honestly, is, surrounds the administrative law judge's
handling and treatment of the three forms completed by
plaintiff's treating physician Dr. Emily Wood.  The argument
is that as a treating source, those opinions were entitled to
controlling weight, and that it was improper to elevate the
opinions of nontreating sources such as Dr. Hennessey and
Dr. Long and Occupational Therapist Graveline and
Dr. Lorensen over the opinions of Dr. Wood.

The second hinges on the first.  It alleges that
the residual functional capacity is not supported by
substantial evidence because the opinions of Dr. Wood and
also Nurse Practitioner Couperus-Mashewske were improperly
rejected or discounted.

The third is, the third contention is that the ALJ

1    should have obtained the testimony of a vocational expert.

2    Again, it's dependent on the additional limitations set forth

3    in Dr. Wood's medical source opinions.

4          And the fourth is that substantial evidence does

5    not support the administrative law judge's rejection of

6    Dr. Lorensen's additional limitations of moderate to marked

7    limitation in bending, lifting, and reaching.

8          In terms of the treating source, Dr. Emily Wood in

9    August of 2018 completed three forms, primarily check-box

10   forms.  Those appear at pages 720 of the record through

11   733 -- I'm sorry, 734, and they're extremely limiting.  In

12   the first of those, the administrative law judge concluded

13   that plaintiff can walk for 10 minutes before needing a

14   break.  The opinion also finds that plaintiff would be off

15   task 25 percent or more of the time and absent more than four

16   times per month and that plaintiff is incapable of even low

17   stress work, that's at page 724.

18         The second form, which focuses on plaintiff's

19   mental condition, is extremely limiting, finding marked

20   limitations in many areas and an extreme limitation in

21   plaintiff's ability to respond appropriately to usual work

22   situations and to changes in a routine work setting.

23         The third form focuses on plaintiff's physical

24   capabilities, finding that she can only occasionally lift up

25   to, and carry up to 10 pounds and can never lift or carry

more than 10 pounds.  It finds that she can sit for only two

hours and stand for one hour and walk for one hour in an

eight-hour day.  It concludes that she can never reach

overhead with left or right hand, can never push or pull with

the left or right hand.  It finds also that she can never

climb ladders, scaffolds, balance, stoop, kneel, crouch, or

crawl.  Environmentally it also concludes that she can never

be subject to unprotected heights, moving mechanical parts,

dust, odors, fumes, pulmonary irritants, extreme cold,

extreme heat, and vibrations.

The forms, as I indicated, were check-box forms

with little or no explanation.

The administrative law judge discussed and

summarized those reports at page 41, also discussed them at

page 36, and 41 and 42.  It is true, as plaintiff argues,

that ordinarily as a treating source, Dr. Wood's opinions

regarding the nature and severity of plaintiff's impairments

would be entitled to considerable deference, provided they

are supported by medically acceptable clinical and laboratory

diagnostic techniques and not inconsistent with other

substantial evidence.  Such opinions as those of Dr. Wood,

however, are not entitled to controlling weight if they're

contrary to other substantial evidence in the record,

including the opinions of other medical experts.  And of

course it is for the administrative law judge to resolve

conflicts in the form of contradictory medical evidence under *Veino v. Barnhart*, 312 F.3d 578, pin cite 588, and it's from the Second Circuit 2002. If an ALJ doesn't give controlling weight to a treating source's opinion, the ALJ must apply various factors specified in 20 C.F.R. Sections 404.1527 and 416.927 to illuminate how much, if any, weight was given to the treating source's opinion. In the Second Circuit, they're called, so-called the *Burgess* factors. The failure to apply the proper legal standards for considering treating source opinions can provide a basis for reversal of an ALJ's determination. The Second Circuit has somewhat tempered that rule in *Estrella v. Berryhill*, 925 F.3d 90, Second Circuit 2019, and the cases that have come before and after *Estrella*, noting that if the court is satisfied after reviewing the administrative law judge's decision as a whole, the treating source rule was not violated.

In this case, Administrative Law Judge Hoffman does cite several reasons for discounting Dr. Wood's opinions. She notes that they're not supported by treatment notes and overall, the overall record, and that's at page 36 when it comes to the mental conditions experienced by the plaintiff and at page 42 when it comes to the physical, and some examples are cited. And let me step back, I know that plaintiff has argued that the administrative law judge, by saying that certain opinions are not supported, medical

opinions that is, by treatment notes and records is playing

doctor, but it is also true under the regulations that an

opinion is entitled to controlling weight, for example,

treating source opinion, only if it is supported by

substantial evidence, including medical evidence, so it is

perfectly legitimate and proper for the administrative law

judge to make that analysis.  The administrative law judge

did not, it is clear, rotely discuss the *Burgess* factors in

her decision, but she did point to some significant reasons

why she rejected Dr. Wood's opinions.  They're internally

inconsistent when you look at them and focus on the walking,

how long plaintiff can walk before needing a break, two

different answers appear.  Manipulation, again, inconsistent.

The off task, the 25 percent opinion that plaintiff would be

off task is speculative, there's no explanation given as to

the basis for that opinion.

The issue really is not, as most plaintiffs would

like to focus on, whether the court or plaintiff would deem

Dr. Wood's opinion controlling.  The focus is on, is the

ALJ's determination supported by substantial evidence, or

would a reasonable fact finder have to conclude otherwise

than the administrative law judge did.  And also, of course,

the court must be satisfied that the treating source rule was

not violated under *Estrella*.  I note that these forms from

Dr. Wood are check-box forms with minimal explanation.  Such

1    forms are notoriously not persuasive.  Many courts have found

2    that such forms, without explanation, should be given

3    minimal, if any, weight.

4            This case is somewhat similar to another

5    fibromyalgia case in which the opinions of Dr. Lorensen, as a

6    matter of fact, were discounted, *Thomas Roy v. Commissioner*

7    *of Social Security*, 2020 WL 4365607, from the Northern

8    District of New York, Senior District Judge Gary L. Sharpe.

9    Again, it is clear in this case that there are contradictory

10   medical opinions and the weighing of those opinions is

11   entrusted in the administrative law judge under *Veino*.  And

12   the administrative law judge, it's well accepted, can elevate

13   the opinions of other nontreating sources including Dr. Long,

14   Dr. Lorensen, over Dr. Wood, even though Dr. Wood is a

15   treating source, if they're more consistent with the notes of

16   exams and so forth.

17           I also note that there is an opinion, as counsel

18   noted, from an Occupational Therapist Ashleigh Graveline from

19   December 1, 2016, it appears at pages 589 through 621 of the

20   administrative transcript, based upon her examination of the

21   plaintiff and testing.  She concludes at page 593 that the

22   plaintiff performed within the light work demand level as

23   defined and outlined in the Dictionary of Occupational

24   Titles.  And although plaintiff argues that that was not

25   entitled to consideration since, as an occupational

1    therapist, Ms. Graveline is not an acceptable medical source,

2    the regulations are clear that such opinions can be

3    considered by an administrative law judge under 20 C.F.R.

4    Sections 404.1527(f)(1) and 416.927(f)(1).  The next -- and

5    so I find that the treatment of Dr. Wood's opinions did not

6    run afoul of the treating source rule and was properly

7    explained.

8           The next argument is residual functional capacity

9    argument.  Residual functional capacity represents a finding

10   of the range of tasks a plaintiff is capable of performing

11   notwithstanding her impairments.  Ordinarily, the RFC

12   represents a claimant's maximum ability to perform sustained

13   work activities in an ordinary setting on a regular and

14   continuing basis, meaning eight hours a day for five days a

15   week or an equivalent schedule.  An RFC determination must be

16   informed by consideration of all relevant medical and other

17   evidence.

18          In this case, the issue is not, again, whether some

19   evidence supports plaintiff's position but whether

20   substantial evidence supports the administrative law judge.

21   In other words, in many of these cases there can be two right

22   answers, substantial evidence can support a plaintiff's

23   argument and can also support an administrative law judge's

24   determination which is contrary to that argument.  It is also

25   true that in formulating an RFC, an ALJ need not discuss

1   literally every shred of evidence.  There are some facts

2   supporting plaintiff's position and she acknowledged as such,

3   but the administrative law judge, in formulating her RFC,

4   properly included plaintiff's rather fulsome activities of

5   daily living at page 39, records, medical records showing

6   that medications have controlled many of plaintiff's

7   conditions, including her psoriatic arthritis and her pain at

8   page 39.  She cites relatively benign x-ray and MRI evidence

9   at pages 39 to 40.  She cites medical exams showing

10  relatively benign findings at page 40.  She relied on

11  Occupational Therapist Graveline's evaluation and

12  Dr. Lorensen's consultative opinions.  Dr. Lorensen in her

13  consultative report, which appears at pages 411 to 415 of the

14  administrative transcript, she concludes that plaintiff

15  suffers from no gross limitations in sitting, standing,

16  walking, and handling small objects with the hands.  She does

17  experience moderate to marked limitations for bending,

18  lifting, and reaching.  The administrative law judge of

19  course did, and I'll get to that in a moment, not accept

20  Dr. Lorensen's opinion in whole which of course she's

21  certainly entitled to do.  She's entitled to accept some

22  parts but not a whole of a medical opinion.  The third

23  argument -- And so I don't -- I do find that the residual

24  functional capacity finding of the administrative law judge

25  is supported by substantial evidence.

1        The third argument is that a vocational expert

2   should have been called to fill in the void created by the

3   additional exertional and nonexertional limitations

4   experienced by the plaintiff.  That argument really hinges

5   upon Dr. Wood's additional limitations and so the argument

6   fails since I have already found that her opinions were

7   properly discounted.

8        The last issue pertains to the treatment of

9   Dr. Lorensen's opinion and specifically surrounds the

10  limitation, the moderate to marked limitation in bending,

11  lifting, reaching.  The administrative law judge acknowledged

12  it but found it is not supported at page 41, and in doing so,

13  she relied upon Occupational Therapist Graveline's opinion

14  and plaintiff's activities of daily living.  She explained

15  the rejection of the moderate limitation in reaching.

16       The case is very similar to, as Commissioner

17  argued, *Dierdre R. v. Commissioner of Social Security*, 2018

18  WL 4565769 from Administrative Law Judge -- I'm sorry, from

19  Magistrate Judge Thérèse Wiley Dancks.  In note 7 of her

20  decision, Judge Dancks also notes that moderate to marked

21  limitations does not necessarily preclude the performance of

22  light work.  So if, and I say only if because I do think that

23  rejection was properly explained and supported by substantial

24  evidence, but if Dr. Lorensen's limitation on reaching were

25  to have been accepted, or should have been accepted, it would

1    be a harmless error since under *Dierdre*, as well as *Babcock*

2    *v. Berryhill*, 2018 WL 4347795, note 13, in that case it was a

3    moderate restriction in bending and lifting, does not

4    preclude light work.  It's also supported by *Moxham v.*

5    *Commissioner of Social Security*, that's 2018 WL 1175210, at

6    *8.  In that case, the consultative expert, Dr. Magurno,

7    opined that plaintiff had marked limitations in squatting,

8    lifting, carrying, and mild limitations for walking,

9    standing, sitting, and bending, and the judge in that case,

10   Magistrate Judge Daniel J. Stewart, concluded that plaintiff

11   had failed to illustrate how those marked limitations in

12   those areas would be inconsistent with light work.  So, and I

13   guess as a backdrop, we have to bear in mind that it is

14   always the plaintiff's burden at least through step four to

15   establish additional limitations that were not accounted for

16   in the residual functional capacity.  In this case, I find

17   that burden was not met.

18        So in conclusion, I find that the administrative

19   law judge's decision resulted from the application of proper

20   legal principles and is supported by substantial evidence.  I

21   will grant judgment on the pleadings to the defendant and

22   order dismissal of plaintiff's complaint.  Again, thank you,

23   both counsel, I hope you enjoy your summer.

24        MR. HASSELER:  Thank you, your Honor.

25        MR. HENRY:  Thank you, your Honor.

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

 5     Official Realtime Court Reporter, in and for the

 6     United States District Court for the Northern

 7     District of New York, DO HEREBY CERTIFY that

 8     pursuant to Section 753, Title 28, United States

 9     Code, that the foregoing is a true and correct

10     transcript of the digitally-recorded proceedings

11     held in the above-entitled matter and that the

12     transcript page format is in conformance with the

13     regulations of the Judicial Conference of the United

14     States.

15

16                          Dated this 9th day of July, 2021.

17

18

19                          /S/ JODI L. HIBBARD

20                          JODI L. HIBBARD, RPR, CRR, CSR
                            Official U.S. Court Reporter
21

22

23

24

25
```